# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

In re JOHANNA E. HAWTHORNE,

                     Debtor,

RENEE ELLISON and LOUIS A. BREUER,

                     Plaintiffs,

       v.

JOHANNA HAWTHORNE,

                     Defendant.

Case No. 3:12-cv-00072-SLG

## ORDER OF DISMISSAL

This matter is before the Court following the Ninth Circuit Court of Appeals mandate which affirmed in part, reversed in part, and remanded the Court's October 16, 2012 dismissal of this case.[1]  The Court also addresses two motions by Plaintiffs: at Docket 102, Ellison/Breuer seek to substitute Plaintiff Louis Breuer for Defendant Johanna Hawthorne because Ms. Hawthorne died on May 20, 2014 and Mr. Breuer was appointed personal representative of her estate; at Docket 104, Ellison/Breuer seek to substitute or add Robert and Sharon Johnson as defendants because the Johnsons received from Hawthorne, by Deed in Lieu of Foreclosure, the apartment building where the landlord-tenant disputes between Ellison and Hawthorne originated.  Ellison/Breuer have briefed the motions; the Johnsons have appeared to oppose their addition to this

---

[1] See generally Docket 64 (Court of Appeals Memorandum). See also Docket 44 (Judgment).

action.[2]  Ellison/Breuer and the Johnsons have each extensively discussed the viability of the remaining claims in this action in their briefing.  Oral argument was not requested and was not necessary to the Court's decision.[3]

The humble origins of this case belie its rather exceptional progression through the federal courts.  The dispute originated in 2009 when Johanna Hawthorne, an elderly landlord, sought to evict Renee Ellison from a four-plex apartment unit in Palmer, Alaska. The tenancy began as a six-month lease in March 2009.  The lease limited the occupants to one adult and three children.  The lease also indicates that Ms. Ellison paid an initial $925.00 security deposit; but Ms. Hawthorne submitted an affidavit in support of her 2012 summary judgment motion in which she testified that she "never received a security deposit" and had instead agreed to waive the deposit in exchange for landscaping work.[4]

Ms. Ellison did not leave the premises when the six-month term expired in September 2009.  On November 10, 2009, Ms. Hawthorne wrote to Ms. Ellison seeking to terminate the tenancy.  Ms. Hawthorne indicated in the letter that she believed there were then two adults and six children occupying Ms. Ellison's apartment.  Ms. Hawthorne provided 30-days notice to vacate the property, but added that "as the holiday season is approaching," Ms. Ellison could instead elect to remain in the unit through December 31,

---

[2] *See* Docket 102–105, 111, and 114.

[3] The Court would generally allow supplemental briefing prior to dismissal of an action.  But given that there is presently no one appearing in this action to advocate on behalf of the Estate of Ms. Hawthorne, and the fact that all issues have been extensively briefed, the Court finds supplemental briefing unnecessary and unwarranted.

[4] *See* Docket 19 (Memorandum), 19-2 (Lease), 19-4 (Letter), 19-6 (Log notes), 19-11 (Hawthorne Aff.).

2009 with a $25 per month rent increase for that one month.[5]  Mr. Breuer has alleged that Ms. Ellison tried to tender $775 to Ms. Hawthorne for rent for the month of December.[6]  But there appears to be no admissible evidence in the record to support that allegation.  In any event, Ms. Hawthorne filed a Forcible Entry and Detainer proceeding in state court on December 18, 2009.[7]  It appears undisputed that Ms. Ellison did not pay rent in December 2009 or January 2010, and did not vacate the apartment until January 25, 2010, after the state court entered a Judgment for Possession for Ms. Hawthorne and ordered Ms. Ellison to pay $745 toward Ms. Hawthorne's court costs.[8]  Mr. Breuer filed a Motion for Reconsideration on January 22, 2010.[9]  The state court denied the motion and no appeal was taken.[10]

From there, the original dispute has evolved into a four-year federal court odyssey.

Ms. Ellison, whose interests Mr. Breuer is supposed to represent, has never directly participated in this adversary bankruptcy case.  The only sworn statement by Ms. Ellison in the Court's file is the verified First Amended Answer/Counterclaims that Ms. Ellison submitted in the state court eviction proceedings on December 27, 2010.  In that verified statement, which the notary indicated Ms. Ellison signed on December 17, 2010,

---

[5] Docket 19-4 (Letter).

[6] Docket 19 (Memorandum) at 2.

[7] Docket 19-5.

[8] Docket 19-7 (Judgment for Possession).

[9] Docket 19-8 (Motion).

[10] *See* Docket 19 at 12.

Ms. Ellison makes a number of statements, including the following two rather conclusory claims:

### First Counterclaims – Unfitness of Premises (A.S. 34.03.100)

As her first counterclaim, Defendant states as follows:

21) At the inception of, or during the course of, the lease, Defendant requested that Plaintiff remedy the defects in the premises specifically enumerated and attached hereto as Exhibit C.[11]

22) On or about December 9, 2009, the Central Mat-Su Fire Department notified Plaintiff of specific fire hazards on or about the premises and ordered Plaintiff to correct such violations, and a copy of that order is attached hereto as Exhibit D.[12]

23) Plaintiff failed to make required repairs and put and keep the premises in a fit and habitable condition.

24) Plaintiff failed to maintain in good and safe working condition all electrical, plumbing, sanitary, heating, ventilating, air-conditioning, kitchen, and other facilities and appliances supplied or required to be supplied by a landlord.

25) Having been requested by Defendant, Plaintiff failed to provide and/or maintain locks and furnish keys reasonably adequate to ensure the safety of the defendant, her family, and her property.

26) Plaintiff failed to provide smoke detection devices and carbon monoxide detection devices as required by applicable law.

\*\*\*

### Third Counterclaim – Retaliatory Eviction (A.S. 34.03.310(b))

As her third counterclaim, Defendant states as follows:

---

[11] Exhibit C is a hand-written note titled "Things We've Asked To Be Fixed." *See* Docket 28-5 at 4.

[12] Exhibit D is a December 2, 2009 report by the Mat-Su Fire Department documenting problems with the apartment's carbon monoxide and smoke detectors. *See* Docket 28-6. But this is not evidence of a wrongful or retaliatory eviction because the termination of tenancy letter predated it by nearly a month.

31) Defendant re-alleges and incorporates as if fully rewritten here the allegations contained in Paragraphs 21-26.

32) Subsequent to, and on account of, Defendant's complaints about the defects in the premises, Plaintiff retaliated against Defendant by increasing rent or decreasing services or by bringing or threatening to bring an action for possession of the premises.

33) Defendant was unlawfully removed or excluded from the premises on or about January 25, 2010.[13]

In August 2011, before Ms. Ellison's counterclaims in the eviction action had been heard by the state court, Ms. Hawthorne filed for bankruptcy—listing Ellison/Breuer as creditors—which stayed the state court proceedings.

On November 4, 2011, Ms. Hawthorne motioned in the bankruptcy court to abandon out of her bankruptcy estate the apartment building where Ms. Ellison had lived.

On November 21, 2011, Mr. Breuer filed the adversary complaint in the bankruptcy court on behalf of himself and Ms. Ellison that initiated this case. That complaint is not verified. It repeated many of the conclusory statements from the state court counterclaims and added a claim for "Breach of Covenant of Quiet Enjoyment / Wrongful Eviction." That claim asserted that the "[d]ebtor's actions in evicting Plaintiff were in violation of the lease and applicable state law."[14] Ellison/Breuer also added Count 8 ("Debtor has done willful and malicious injury to Plaintiff and/or her property such that Plaintiff's claims are non-dischargeable") and Count 9 ("Plaintiff Breuer's claims for attorney fees already incurred in Case No. 3PA-09-2590CI is derived from Plaintiff's

---

[13] Docket 28-4 and 28-5 (Verified Answer). January 21, 2010 is the date that the state court judgment of possession awarded possession of the premises to Ms. Hawthorne.

[14] *In re Hawthorne*, No. A11-00659-DMD, Docket 27.

claims against Debtor and, likewise, are non-dischargeable").  As pled, if Counts 8 and 9 are dismissed in their entirety, then all of Ellison/Breuer's claims against Ms. Hawthorne are dischargeable.

On December 9, 2011—almost a year before this Court's dismissal of this adversary action, and over Ellison and Breuer's opposition—the bankruptcy court granted Ms. Hawthorne's motion to abandon the apartment building and removed the apartment building out of Ms. Hawthorne's bankruptcy estate.  The bankruptcy court ruled that "[t]he real property has no value for, and is a burden to, the bankruptcy estate."[15]  Ellison/Breuer did not appeal the abandonment decision.[16]

On January 3, 2012, Hawthorne received a final bankruptcy decree without any distribution to creditors.[17]  Three days later the Johnsons took title to the apartment building by a Deed in Lieu of Foreclosure.[18]  Accordingly, there is no property that ever was, or could now be distributed from, Ms. Hawthorne's bankruptcy estate, a point this Court could well have better articulated in the prior rulings it has made in this case.

On May 31, 2012, this Court granted Ellison/Breuer's motion to withdraw the reference to the bankruptcy court, and this adversary action was moved to this Court.[19]

The Court dismissed this action on the merits on October 16, 2012.  The Court

---

[15] *See* Docket 110-2 (Opp. to Abandonment); *In re Hawthorne*, No. A11-00659-DMD, Docket 34 (Abandonment Order) (Bankr. D. Alaska Dec. 9, 2011).

[16] Docket 110 (Opp.) at 2–3.

[17] *In re Hawthorne*, No. A11-00659-DMD, Docket 37 (Bankr. D. Alaska Jan. 3, 2012).

[18] Docket 110-1 (Deed in Lieu) at 11.

[19] Docket 4 (Order).

dismissed Ellison's Count 1 (Breach of Covenant of Quiet Enjoyment / Wrongful Eviction) and Count 5 (Retaliatory Eviction) as precluded under the *Rooker-Feldman* doctrine. It granted summary judgment in favor of Hawthorne on Count 2 (Breach of Covenant of Good Faith). The Court found insufficient evidence of willful or maliciousness to allow for non-dischargeability of any recovery under Counts 3 (Unfitness of Premises) and 6 (Breach of Separate Reimbursement Contract). On Count 4 (Unfair and Deceptive Trade Practices), the Court granted summary judgment in favor of Hawthorne because the statute on which Ellison based the claim does not apply to residential landlord-tenant leases. The Court found no evidence of willful or malicious injury to Ellison, and accordingly granted Hawthorne summary judgment on Counts 8 and 9 (Non-Dischargeability). Having dismissed or granted summary judgment on Counts 1 through 6, the Court granted summary judgment to Hawthorne on Count 7 (Attorney Fees). And the Court granted summary judgment to Hawthorne on Counts 10–12 (Equitable Liens), finding them inapplicable (1) in light of the other rulings, and (2) when a former tenant seeks to recover against the landlord with regard to alleged conduct during the term of the rental agreement.[20]

Ellison/Breuer appealed, and on November 26, 2013 the United States Court of Appeals for the Ninth Circuit affirmed in part, reversed in part, and remanded.[21] The Court of Appeals affirmed this Court's rulings on Counts 2, 4, 8 and 9, adding (with regard to Counts 8 and 9) that "[v]iewed in the light most favorable to Ellison, there is no genuine

---

[20] Docket 56, 57 (Transcripts).

[21] *See generally* Docket 64 (Court of Appeals Memorandum).

issue of material fact relevant to Hawthorne's willfulness and malicious intent with respect to Counts 2, 3, 4, and 6."[22]  Consistent with its order affirming this Court's rulings on Counts 8 and 9, the last paragraph of the Court of Appeals' decision does not identify Counts 8 and 9 as reversed or remanded, either in whole or in part.

The Court of Appeals did not directly address Hawthorne's willfulness or malicious intent with respect to Counts 1 and 5.  But the Court does not find the Court of Appeals silence in this regard as inconsistent with its affirmation of this Court's rulings on Counts 8 and 9, which found *all* the Ellison/Breuer claims dischargeable.  In its previous ruling on Counts 8 and 9, this Court considered the sparse evidence in the record regarding Ms. Hawthorne's conduct as relevant to all of Ellison/Breuer's claims.[23]  The only evidence Ellison/Breuer submitted on willfulness and maliciousness was Ms. Ellison's verified answer in the state court eviction proceeding.[24]  This Court ruled that Ellison/Breuer did not raise the requisite showing of willful and malicious injury to create a triable issue of fact.[25]  The Court of Appeals affirmed this ruling.  Accordingly, the Ellison/Breuer claims against Hawthorne are all dischargeable; and recourse is limited to the bankruptcy estate, which was closed with no distribution to creditors nearly 4 years ago.

While upholding the dischargeability ruling on Counts 8 and 9, the Court of Appeals reversed this Court's grant of summary judgment to Hawthorne on Counts 3 and 6, based on an assumption that Ellison/Breuer could obtain a pro-rata share of the property of the

---

[22] Docket 64 at 3.

[23] Docket 57 at 6–10.

[24] Docket 28-4 and 28-5 (Answer).

[25] Docket 57 (Transcript) at 10.

bankruptcy estate if they were to prevail on these claims.[26]  But this Court failed to clearly articulate that because Ms. Hawthorne received a discharge with no distribution to creditors, there can be no pro-rata share available to Ellison/Breuer.  Hence this Court focused on Ms. Ellison's lack of a willful and malicious injury—not as an element of Counts 3 or 6—but as a finding that rendered those claims moot because they would be discharged and there would be no assets to satisfy any recovery.

The Court of Appeals' memorandum disposition concludes, "[b]ecause we reverse in part the district court's decision on the merits, we reverse and remand its grant of summary judgment with respect to Count 7 (seeking attorneys' fees) and Counts 10, 11, and 12 (seeking equitable liens)."[27]  Notably, the mandate to this Court does not direct any action on Counts 8 and 9, but rather upheld this Court's order granting summary judgment to Ms. Hawthorne on those two claims in their entirety.

In summary, the Court of Appeals ruled that this Court dismissed Counts 1 and 5 and granted summary judgment on Counts 3 and 6 on improper grounds; and that if Ellison/Breuer happen to succeed on any of those claims, the Court could award fees (Count 7) or establish an equitable lien (Counts 10–12).  But every Ellison/Breuer claim is dischargeable, as the Court of Appeals found; and there are no assets in the bankruptcy estate to satisfy any judgment.

It appears this case has continued on for so long solely due to the persistence of Attorney Louis Breuer.  He named himself as a plaintiff in the adversary action because

---

[26] Docket 64 at 4–5.

[27] Docket 64 at 5.

he "was scheduled as a creditor of the debtor in this [Hawthorne's] bankruptcy proceeding" by virtue of a "contingent, unliquidated, and disputed" claim for attorneys' fees he has hoped to recover if he eventually prevails on one of Ms. Ellison's claims and obtains a fee award.[28]  Because the case could not continue without a defendant after Ms. Hawthorne died, Mr. Breuer applied for and received an appointment from the state probate court as Ms. Hawthorne's personal representative.[29]  So Mr. Breuer now seeks to appear for the defendant while also advocating for himself as a self-represented plaintiff, and as the attorney for Ms. Ellison.[30]  And he would like to join new defendants who have nothing to do with the underlying 2009 landlord-tenant dispute.  Given that the Ninth Circuit affirmed this Court's dismissal of Counts 8 and 9, none of these actions are appropriate, as there is no basis for this litigation to continue.

Under 11 U.S.C. § 524(a)(2), a discharge "operates as an injunction against the commencement or continuation of an action…to collect, recover or offset any such [discharged] debt as a personal liability of the debtor."[31]  This is frequently referred to as the "discharge injunction."[32]  In the Bankruptcy Code, the term "debt" means liability on a claim.[33]  A "claim" includes:

---

[28] Docket 26 (Amended Complaint).

[29] *See* Docket 100 (Probate Court Documents) and 101 (Memorandum).

[30] Docket 102 (Motion).

[31] *See also In re Zilog, Inc.*, 450 F.3d 996, 1007 (9th Cir. 2006).

[32] *See generally Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002).

[33] 11 U.S.C. § 101(12).

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.[34]

The bankruptcy court ordered Ms. Hawthorne's debts discharged on December 21, 2011.[35]  In its April 4, 2012 Report and Recommendation regarding the withdrawal of the reference, the bankruptcy court explained that "[t]he plaintiffs' state law counts cannot survive Hawthorne's bankruptcy discharge, unless and except to the extent that any of those counts are found to be for 'willful and malicious injury by the debtor to another entity or to the property of another entity.'"[36]  In dismissing Counts 8 and 9, this Court ruled, and the Court of Appeals affirmed, that all of the Ellison/Breuer's claims are dischargeable. Accordingly, none survive, all are barred by the discharge injunction, and the action will be dismissed.

Therefore, IT IS ORDERED that:

1.  The Motions at Docket 102 and 104 are DENIED as moot.

2.  This action is DISMISSED.

DATED this 26th day of October, 2015 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[34] 11 U.S.C. § 101(5).

[35] *In re Hawthorne*, No. A11-00659-DMD, Docket 35 (Bankr. D. Alaska Dec. 21, 2011).

[36] *In re Hawthorne*, No. A11-00659-DMD, 2012 WL 1143656, at *5 (Bankr. D. Alaska Apr. 4, 2012).  Ellison/Breuer recognize this at least with respect to the equitable lien claims, all of which are pled in the Amended Complaint as applicable "[t]o the extent Plaintiff's claims herein are held non-dischargeable."